IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON A. ANDERSON, | ) | CASE NO. 1:18-CV-01096 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| | ) | |
| GREATER CLEVELAND REGIONAL | ) | MEMORANDUM OPINION AND |
| TRANSIT AUTHORITY, *et al.*, | ) | ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants Greater Cleveland Regional Transit Authority's ("Defendants'" or "GCRTA's") Motion for Summary Judgment. (ECF #33). Plaintiff, Jason A. Anderson ("Plaintiff" or "Mr. Anderson") timely filed a Brief in Opposition (ECF #41) and GCRTA filed a Reply. (ECF #45). This matter is fully briefed and ripe for review. For the reasons set forth herein, Defendants' Motion for Summary Judgment is GRANTED.

I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Jason Anderson brings this action against his former employer Defendants Greater Cleveland Regional Transit Authority and Joseph Calabrese ("Defendant Calabrese")[2] alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964

---

[1] Except as otherwise noted, the factual summary is based solely on the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint and Amended Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through the submitted affidavits or other evidence will be addressed in the body of the opinion and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

[2] Plaintiff's briefings contain no specific allegations against Joseph Calabrese. All claims asserted against him in Plaintiff's Complaint and Amended Complaint are dismissed.

1

and Ohio Revised Code § 4112.01 *et seq*. Plaintiff asserts GCRTA discriminated against him by denying him a promotion to Field Training Officer on the basis of race, issuing excessive discipline, and ultimately terminating his employment. Plaintiff further alleges he was retaliated against for filing a charge with the EEOC and asserts a claim for intentional infliction of emotional distress.

### a. Plaintiff's Employment with GCRTA

Mr. Anderson, an African American male, began his employment in GCRTA's Division of Police as a Fare Enforcement Officer on or around January 4, 2010. (Compl., ECF #1, at ¶ 13; Anderson Depo. at p. 16). GCRTA is a political subdivision of the State of Ohio and operates public bus, rail and paratransit transportation services throughout Cuyahoga County. (ECF #33, at p. 5). GCRTA employs over two-thousand (2,000) employees in a number of capacities, including Fare Enforcement Officers and Field Training Officers. (*Id.* at p. 6).

In 2011, Plaintiff applied for and was promoted to the position of Field Training Officer ("FTO") in GCRTA's Fare Enforcement Unit. (Anderson Depo. at p. 25-26). Plaintiff performed the duties and responsibilities of a Field Training Officer for nearly four (4) years. (ECF #1, at ¶ 14). In 2013, Plaintiff resigned from GCRTA and took a position with the Cleveland Heights Police Department. (Anderson Depo. at p. 44). After eight (8) days of employment, Plaintiff resigned from the Cleveland Heights Police Department and sought reemployment with GCRTA. (Anderson Depo. at p. 45-46). GCRTA reemployed Plaintiff as a Patrol Officer in its Fare Enforcement Unit where Plaintiff's job responsibilities included patrolling the Healthline buses and stations and checking for valid proof of payment. (Anderson Depo. at p. 40). As a GCRTA employee, Mr. Anderson was a member of the Fraternal Order of Police, Ohio Labor Council, Inc., (the "Union" or "FOP"). (Anderson Depo. at p. 51).

2

### b. Plaintiff Applies for Field Training Officer Promotion

On or around June 16, 2015, GCRTA issued a Canvas soliciting employees to apply for the position of Field Training Officer. (ECF #1, at ¶ 15). The Canvas indicated that performance, disciplinary history, attendance and commendations would be considered and that employees were expected to adhere to Transit Police Department rules. (Brooks-Williams Aff. at ¶ 3, Ex. 1). Plaintiff and two Caucasian officers, Mark Flynn ("Officer Flynn") and John Pechkurow ("Officer Pechkurow") applied for and took the examination for the Field Training Officer position. (ECF #1, at ¶ 17). Officer Flynn scored the highest on the exam, followed by Officer Pechkurow and then Plaintiff. (ECF #1, ¶ 18). All three candidates were interviewed by a panel consisting of two African American employees, Orlando Hudson and Nicole Saxon, and Plaintiff's former supervisor, Richard Copp, a Caucasian male. (Anderson Depo. at p. 60-62).

After Officer Flynn withdrew his application and Officer Pechkurow declined the promotion to Field Training Officer, Plaintiff was informed he would not be promoted due to concerns regarding his job performance, disciplinary history and attendance. (ECF #1, ¶ 22-24). The interview panel cited concerns that Plaintiff could negatively influence new GCRTA trainees given his history of well-documented coachings and discipline. (Brooks-Williams Aff. at ¶ 4-6). GCRTA placed Caucasian officer Kyle Horton ("Officer Horton") in the position although he had not canvassed or tested for the promotion. (ECF #1, ¶ 26). On March 26, 2016, Plaintiff filed an internal complaint of discrimination on the basis of race with GCRTA's EEOC office and separately filed a charge with the EEOC. (ECF #1, ¶ 32).

### c. Plaintiff's Disciplinary History with GCRTA

Plaintiff received a number of coachings and discipline issued by his supervisors over the course of his employment with GCRTA, including:

- On April 17, 2012, Plaintiff received a coaching for being involved in a preventable motor vehicle accident in an unmarked RTA Transit Police Vehicle. (Anderson Depo. Ex. 5).

- On March 5, 2013, Plaintiff received a coaching for making disrespectful and unprofessional comments about a fellow officer over the police radio. (Anderson Depo. Ex. 6).

- On August 14, 2014, Plaintiff received a coaching for failing to report to work for an overtime shift that Plaintiff had volunteered to work. (Anderson Depo. Ex. 7).

- On January 1, 2015, Plaintiff received a coaching for neglecting his responsibilities as a first responder after witnessing a motor vehicle accident involving an RTA coach. Plaintiff continued driving rather than stopping to provide assistance to injured passengers. (Anderson Depo. Ex. 8).

- On August 5, 2016, Plaintiff received a coaching for allowing a person to ride without proof of payment purchase or validation of fare and failing to take any enforcement action. (Anderson Depo. Ex. 9).

- On August 5, 2016, Plaintiff received a First Written Warning for a disruptive, disrespectful and unprofessional outburst directed at Plaintiff's supervising officer during the Republican National Convention. He yelled, among other things, "You disgust me. The very thought of you is disgusting to me and your presence sickens me." (Andero Depo. Ex. 10).

- On January 25, 2017, Plaintiff received a coaching for failing to address the resistive and disorderly behavior of a fare violater at the Tower City Rapid Station. (Anderson Depo. Ex. 11).

- On April 12, 2017, Plaintiff received a coaching for failing to attend to scheduled court appearances. (Anderson Depo. Ex. 12).

- On May 30, 2017, Plaintiff received another First Written Reminder for violation of Employee Performance Code for failing to maintain control of a suspect following an investigative detention. (Anderson Depo. Ex. 13).

d. **May 26, 2017 Beachwood Double Tree Incident**

On May 26, 2017, Plaintiff was involved in an off-duty incident involving his girlfriend at the Double Tree Hotel in Beachwood, Ohio. (ECF #1, at ¶ 37). Shortly after 3:00 a.m., the Double Tree staff reported a disturbance to the Beachwood Police Department. (*Id.*). Plaintiff's girlfriend,

Yvonne Shenje Reggans ("Ms. Reggans"), who sustained visible injuries, informed police that Plaintiff had assaulted her in their hotel room. (Anderson Depo. at p. 225). After Ms. Reggans left the hotel room, Plaintiff fled the scene to drive home, leaving his loaded GCRTA issued service weapon unsecured in the hotel room's open safe. (Anderson Depo. at p. 228). Police officers also observed several drops of blood on the floor, bed, phone and desk. (*Id.*). Beachwood Police instructed Plaintiff to turn himself in, and at approximately 4:45 a.m. Plaintiff reported to the station. (Anderson Depo. at p. 231).

On June 13, 2017, Plaintiff was charged with Disorderly Conduct and Failure to Secure a Dangerous Weapon Ordinance, violations of §§ 648.04 and 672.05 of the Beachwood Municipal Code, both misdemeanors of the First Degree. (ECF #1, at ¶ 38). As a result of the charges, Plaintiff's access to the LEADS system, a database utilized by law enforcement officers in Ohio, was revoked. (Chief Joyce Depo. at p. 56, Ex. 2). GCRTA placed Plaintiff on paid Crisis Suspension on May 31, 2017 and referred him to the Employee Assistance Program ("EAP"). (ECF #1, at ¶ 39). On June 8, 2017, Plaintiff was cleared to return to work. (ECF #1, at ¶ 40). Upon his return, Plaintiff was advised there would be an internal investigation and Plaintiff was placed on Crisis Suspension pending the completion of the investigation. (Chief Joyce Depo at. 42, Ex. 1).

### e. **GCRTA Terminates Plaintiff's Employment**

An investigation by GCRTA concluded Plaintiff had violated the GCRTA's Code "to the point of a pattern of misconduct" such that "Officer Anderson's actions not only harmed the reputation of the Transit Police Department, and by extension that of the GCRTA, but further harm could have been incurred had his unsecured weapon fallen into the wrong hands." (Chief Joyce Depo. at p. 108-109; Report p. 8-9). Defendants scheduled Plaintiff's Pre-Disciplinary Interview

for June 28, 2017 and on July 13, 2017 Plaintiff's employment with GCRTA was terminated on July 13, 2017. (ECF #1, at ¶ 41-42).

Following his termination, Mr. Anderson filed a grievance with his Union and a hearing over Plaintiff's termination was held on May 30, 2018. (ECF #33, at p. 14). The Arbitrator concluded that GCRTA terminated Plaintiff for just cause and that his conduct during the event at the Double Tree was contrary to that of a Police Officer. (Arb. Decision, p. 15-16). Anderson filed a Motion to Vacate the Arbitrator's decision with the Cuyahoga County Court of Common Pleas, which was dismissed on December 31, 2018. (Anderson Depo at. p. 254).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.* 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a great matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

#### A. <u>Plaintiff's Disparate Treatment Claims Fail as a Matter of Law</u>

Title VII and O.R.C. § 4112 prohibit employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000 *et seq.*; O.R.C. § 4112.01 *et seq*. "It is well established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citations omitted). Plaintiff's disparate treatment claim is premised on three allegedly adverse employment actions: (1) Plaintiff's failure to obtain a promotion to the position of Field Training Officer; (2) GCRTA's discipline and alleged retaliatory conduct following Plaintiff's filing of an EEOC charge; and (3) Plaintiff's termination of employment with GCRTA on July 13, 2017.

##### 1. Prima Facie Case

A plaintiff may establish a claim of disparate treatment in one of two ways – via direct or indirect evidence. First, a plaintiff may establish his case "by presenting credible, direct evidence of discriminatory intent." *Mitchell*, 964 F.2d at 582 n.4. In this case, Plaintiff has neither offered evidence of or even alleged the existence of any direct evidence of discriminatory intent. Therefore, in order to maintain his action, Plaintiff must establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a person from outside his protected class, or received different treatment than employees outside of the protected

class for the same or similar conduct. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990).

If plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decisions at issue. *McDonnell Douglas v. Green*, 411 U.S. 792, 804 (1973). Once a defendant meets this burden of production, a plaintiff must then prove defendant's reasons are a pretext for race discrimination. "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996) citing *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502 (1993).

To withstand summary judgment, a plaintiff must come forward with evidence demonstrating that the defendant's articulated nondiscriminatory justification is not true. *Id.*; *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). To make a submissible case on the credibility of an employer's explanation, a plaintiff is required to show by a preponderance of the evidence that: (1) the defendant's proffered reasons for the adverse employment action had no basis in fact; (2) the proffered reasons did not actually motivate the action; or (3) the reasons were insufficient to motivate the adverse action. *Manzer*, 29 F.3d at 1082.

### 2. Plaintiff Cannot Establish a Prima Facie Case of Race Discrimination Based on GCRTA's Failure to Promote Him

Plaintiff's allegation that GCRTA engaged in "unlawful racial discrimination" by placing a Caucasian employee in the Field Training Officer position for which he applied fails as a matter of law. Mr. Anderson presents no direct evidence of race discrimination in this case. There is no evidence that any GCRTA manager, supervisor, or other person in a position of power ever commented on or referred to Mr. Anderson's race with respect to his job responsibilities or

9

promotion consideration. Further, there is no evidence that any member of the GCRTA interview panel ever made note of his race with respect to their decision.

GCRTA does not dispute that Mr. Anderson is an African American male and thus a member of a protected class. Nor does GCRTA dispute that Mr. Anderson was qualified for, applied, and tested for the canvas of promotion to Field Training Officer. At issue is whether GCRTA had a legitimate, non-discriminatory reason for denying Plaintiff the promotion and awarding it to Officer Horton based on Plaintiff's well-documented history of coachings and discipline. This Court believes such a reason is legitimate and non-discriminatory.

### a. GCRTA Had a Legitimate, Non-Discriminatory Reason to Deny Plaintiff's Promotion

The record supports a finding that GCRTA denied Plaintiff the FTO promotion citing concerns he was not the proper fit given his "filters" and potential for negatively influencing new GCRTA trainees. GCRTA justifies its decision based on Plaintiff's "chronic bad attitude" and legitimate interest in preserving its professional reputation. (ECF #33-1, at p. 21). The interview panel, which consisted of two African American officers and one Caucasian officer, agreed that based on Plaintiff's disciplinary history, he should not be awarded authority to train others.

Plaintiff admits that his only evidence in support of his claim are the notes taken by the interview panel. (Anderson Depo. at p. 66, 72). Notably undermining his reliance on those notes, however, Mr. Anderson admitted that they do not contain any reference to his race. (Anderson Depo. at p. 76-77). Plaintiff testified further that he does not remember anything from the panel nor does he dispute whether the notes are an accurate reflection of the interviews. (Anderson Depo. at p. 67).

Plaintiff's allegation is further undermined by an GCRTA's investigation of his charge. Felicia Brooks-Williams ("Ms. Williams"), Senior Manager of the Office of Equal Opportunity at

the GCRTA, conducted an investigation including a review of (1) an explanation of the decision to deny Plaintiff the position and (2) the notes taken by the three-member interview panel. (Brooks-Williams Aff at. ¶ 5). She also interviewed a number of GCRTA officers who served in a supervisory role to Plaintiff. (*Id.* at ¶ 6). Ms. Williams concluded that:

> Mr. Anderson was denied the position as Field Training Officer because of work performance issues and was not treated differently than employees outside of his protected class. Rather, Mr. Anderson failed consistently to adhere to Transit Police Department rules in a manner that presented him as a negative influence on the Enforcement Officers he might train.

(*Id.* at ¶ 8).

Having provided a legitimate, non-discriminatory reason for not awarding Plaintiff the promotion, GCRTA cannot be held liable for disparate treatment unless Mr. Anderson can show that Defendants reason was mere pretext for discrimination. Although Plaintiff allegedly believes the interview panel based its decision on his race, the record is entirely void of any evidence in support of his position. Further, he does not dispute the accuracy of the panel's notes nor does he present evidence to refute any information or observation contained therein. He also does not dispute Ms. Williams' findings following her investigation. Plaintiff has not provided any evidence that would suggest GCRTA's non-discriminatory explanation for its decision to award the promotion to a Caucasian officer was merely pretextual, or that their decision was motivated by race discrimination. Mr. Anderson has, therefore, failed to present sufficient evidence to satisfy his burden of persuasion on claim of race discrimination.

### 3. Plaintiff Cannot Establish a Prime Facie Case of Race Discrimination Based on GCRTA's Discipline and Termination

Mr. Anderson fails to establish a *prima facie* case of race discrimination with respect to his discipline and termination. There is no evidence to support a finding that GCRTA's actions were made on the basis of race. Plaintiff admitted during his deposition testimony that any discipline he

11

received prior to March 26, 2016 was not because of his race. (Anderson Depo. at p. 129-30). After March 26, 2016, Plaintiff was issued three (3) First Written Warnings and (2) two non-disciplinary coachings, each based on a particular circumstance of Plaintiff's problematic or violative conduct. Plaintiff provides no direct evidence to support a finding that his discipline or termination were made because of his race. Plaintiff also fails to demonstrate how any similarly situated employee received more favorable treatment. The record does however support a finding that GCRTA's actions against Plaintiff were made for legitimate, non-discriminatory reasons following Plaintiff's unlawful conduct the morning of May 26, 2017 at the Double Tree Hotel.

### a. Plaintiff Fails to Satisfy the Fourth Prong of his Prima Facie Case

In his Complaint, Plaintiff identified a number of proposed comparators to support his contention that he received unfair treatment by GCRTA. However, Plaintiff fails to identify how any of the individuals are comparable to Plaintiff or that they were treated more favorably under their particular set of facts. In order to demonstrate that other employees are similarly situated, Plaintiff has the burden to demonstrate that the individual "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

With respect to disciplinary action, the proposed comparator must have engaged in acts of comparable frequency and severity. *Colvin v. Veterans Admin. Med. Ctr.*, 390 Fed. Appx. 454, 458 (6th Cir. 2010) (holding that the plaintiff and proposed comparator were not similarly situated where comparator had received different performance evaluations and had not engaged in the same conduct for which the plaintiff was terminated); *Majewski*, 274 F.3d at 1116. Here, although

12

Plaintiff identifies a number of purported comparators, this Court agrees that Mr. Anderson fails to put forward any evidence that these Law Enforcement Officers are similarly situated to Plaintiff or that they were treated more favorably than Plaintiff. Plaintiff was charged for his role in a violent off-duty incident and for abandoning his unsecured service weapon at the scene. None of those individuals who Plaintiff proposes are comparable engaged in conduct or were present in circumstances similar to Plaintiff. Absent specific evidence that at least one of these employees is similarly situated and was treated dissimilarly, Plaintiff fails to satisfy his *prima facie* burden. *See Hardy v. Eastman Chemical Co.*, 50 Fed. Appx. 739, 743 (6th Cir. 2002) (affirming summary judgment because the plaintiff failed to come forward with specific (or any) facts that the "comparator" had engaged in the same conduct as the plaintiff).

### b. GCRTA had Legitimate and Non-Discriminatory Reasons for Its Actions Against Plaintiff

Even assuming Plaintiff has met his *prima facie* burden, which he has not, Plaintiff does not dispute those material facts of his conduct on the morning of May 26, 2017 at the Double Tree Hotel. Plaintiff can point to no evidence to support that the legitimate, non-discriminatory reason proffered for his termination – namely, his violation of the GCRTA's Code following the Double Tree incident with his girlfriend and his history of disciplinary conduct, was a pretext for discrimination on behalf of GCRTA.

Mr. Anderson would have to prove by a preponderance of the evidence that (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate the discharge. *Baker v. Gerenich Realty, Co.,* No. 3:08 CV 36, 2009 WL 414663 at *4 (N.D. Ohio February 19, 2009) (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)). Plaintiff fails to meet his

burden. Mr. Anderson's conduct on the early morning of May 26, 2017 violated the Code by which GCRTA employees are governed. As Commander O'Neil concluded following his investigation,

> The reckless and negligent actions of Officer Jason Anderson clearly fit into the category of conduct unbecoming. The fact that these actions were criminal in nature are enough in and of themselves to demonstrate conduct unbecoming to an officer…Furthermore, Jason Anderson's actions could be construed as a violation of Rule IV of the Employee Performance Code. By leaving his departmentally issued firearm loaded and unsecured in a hotel room Officer Anderson did fail to adhere to the basic weapon safety and potentially violated local/state law.

(Chief Joyce Aff., Ex. 1.). Further, at the time of the incident, Plaintiff already had a long history of coachings and discipline with his supervisors. GCRTA had well-documented proof of a concerning history of behavior and reason to be concerned should Plaintiff be granted a position of authority over others. There is no evidence to support an allegation that Plaintiff's race played a role in GCRTA's decision to terminate him nor is there any evidence to refute GCRTA's concerns following Plaintiff's conduct and violation of the law and GCRTA Code. Finally, Plaintiff makes no argument that GCRTA's decision to terminate him was a pretext to discriminate against him because of his race and any conclusory assertions made by Plaintiff are not sufficient to show that GCRTA's reason for terminating him was a pretext for racial discrimination. *See, e.g., McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). Accordingly, Plaintiff's disparate treatment claims fail as a matter of law.

### B. **Plaintiff's Retaliation Claims Fail as a Matter of Law**

Plaintiff's claim of retaliation is similarly deficient. Mr. Anderson contends GCRTA subjected him to "increased surveillance and scrutiny" and "excessive and unwarranted" discipline following his filing of an EEOC charge in March of 2016[3]. He specifically alleges GCRTA

---

[3] Plaintiff's Complaint does not allege that Plaintiff was terminated in retaliation for filing an EEOC Charge.

14

engaged in retaliatory conduct by (1) issuing coachings on April 11, 2016 and July 19, 2016; and (2) issuing a First Written Reprimand for Conduct Required on August 5, 2016. (Compl., ECF #1, at ¶¶ 73-75).

"Ohio law prohibits retaliating against an employee who has opposed any unlawful discriminatory practice or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under R.C. § 4112.01 through 4112.07." R.C. 4112.02(I). Retaliation claims based on circumstantial evidence (such as those asserted here) follow the *McDonnell Douglas* Framework, which requires the demonstration of a *prima facie* case, a legitimate and non-discriminatory reason for the adverse employment action, and pretext. *Ladd v. Grand Truck W.R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). This framework also applies to retaliation claims under R.C. § 4112. *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007).

### 1. Prima Facie Case

In order to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) the employer knew he engaged in the protected activity; (3) his employer subsequently took an adverse employment action against him; and (4) the adverse employment action was causally related to the protected activity. *Blackshear v. Interstate Brands Corp.*, No. 10-3696, 2012 WL 3553499, 5 (6th Cir. 2012) (citing *Ladd*, 552 F.3d at 502).

If the plaintiff satisfies his *prima facie* case, the defendant then bears the burden of articulating a non-discriminatory reason for the adverse employment action. *Ladd v. Grand Trunk Western Railroad, Inc.*, 552 F. 3d 495, 502 (6th Cir. 2009). Thereafter, the burden shifts back to the plaintiff to establish that the stated reason is pretextual. *Id.* In *Brown v. Renter's Choice, Inc.*, this Court explained:

> A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. It

is not enough, in other words, to disbelieve the employers; the fact finder
must believe the plaintiff's explanation of intentional discrimination. An
employer may make employment decisions for a good reason, a bad reason,
a reason based on erroneous facts, or for no reason at all, as long as its action
is not for a discriminatory reason.

*Brown v. Renter's Choice, Inc.*, 55 F. Supp. 2d 788, 795 (N.D. Ohio 1999) (internal quotations and citations omitted).

### 2. Plaintiff Cannot Establish the Causal Connection Requirement of a Retaliation Claim

Causation is shown when the evidence is "sufficient to raise the inference that protected activity was the likely reason for the diverse action." *Kurtz v. McHugh*, 423 Fed. Appx. 572, 578 (6th Cir. 2011) (citation omitted). At this stage, Plaintiff must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had she not filed a discrimination action." *Motley v. Ohio Civil Rights Comm'n*, No. 07AP-923, 2008 Ohio 2306 (10th App. Dist. May 13, 2018). "If the evidence indicates that an employer 'would have made the same employment decision regardless of the employee's participation in the protected activity, the employee cannot prevail." *Motley*, 2008 Ohio 2306 at ¶ 11; *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiff has not produced any evidence of a causal connection between his EEOC charge and any alleged adverse or excessive employment actions on behalf of GCRTA. Indeed, all of the evidence shows that any discipline issued to Plaintiff was directly attributable to Plaintiff's failure to perform his job responsibilities and comply with GCRTA policies. Further, Plaintiff has a history of similar disciplinary measures issued prior to his EEOC Charge filing.

When Plaintiff was asked about his allegation of "increased scrutiny" during his deposition, Plaintiff cited his employer's request that he supplement a police report after a "certain amount of time had passed." (Anderson Depo. at p. 114). Plaintiff admitted during his testimony that he has

had to supplement reports in the past, although he thought this particular instance was unfair because "a matter of weeks" had passed between the first report and the supplement. (Anderson Depo. at p. 114-15). Plaintiff further admitted that these types of requests had been made in the past in the normal course of business. (*Id.*).

Absent from Plaintiff's testimony is any evidence that such a request was an adverse employment action taken in response to Plaintiff's filing an EEOC charge. Also absent from the record is any evidence to support a finding that any coaching issued by GCRTA was made in retaliation. The August 5, 2016 First Written Reminder was made in response to Plaintiff's tirade towards his supervisor while in the presence of medical personnel. (Anderson Depo. at p. 122-23). Plaintiff does not deny his conduct during this incident nor does he testify the Written Reminder was issued because of the EEOC charge. Accordingly, the record is void of any evidence linking Plaintiff's coachings or discipline to his EEOC filing.

### 3. Coachings and Similar Disciplinary Measures Are Not Adverse Employment Actions That Would Give Rise to a Retaliation Claim

Plaintiff contends the April 11, 2016 and July 19, 2016 coachings as well as the August 5, 2016 First Written Warning constitute actionable retaliatory conduct. However, "[n]ot everything in the workplace that makes an employee upset or resentful is necessarily 'adverse' or grounds for an actionable claim…" *Perez v. Theller*, 6th Dist. No. S-10-053, 2011-Ohio-2176, at ¶ 14 (App. Ct. 2011) (citing *Primes v. Reno*, 190 F.3d 765, 757 (6th Cir. 1999). An adverse employment action is a "materially adverse change in the terms and conditions of one's employment." *Cregget v. Jefferson County Bd. Of Educ.,* , 491 Fed.Appx. 561 at 565 (citing *White*, 364 F.3d at 797). "Such a materially adverse action includes a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* Further, "[t]he employment action must be more

disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citations omitted).

Under such standard, there is no dispute that such formal and informal disciplinary measures such as coachings or written warnings do not constitute actionable adverse employment actions. Each of these actions constitute a de minimis act that courts have found do not rise to the level of adverse action to support a claim of retaliation. Coachings or other written discipline do not result in a reduction in Plaintiff's pay, a suspension, or a denial of benefits Plaintiff's would have otherwise received. In *Cregget*, the court examined several similar actions to those alleged here and rejected the claim that a written reprimand or being subjected to frequent supervision rose to the level of adverse employment action. *Id.* at 566. Plaintiff's similar allegations of adverse actions are similarly unsubstantiated.

Plaintiff cannot prove the elements to establish a *prima facie* case of retaliation. Further, even if he could, GCRTA had legitimate business reasons for each decision made with respect to Plaintiff, for which Plaintiff cannot demonstrate to be a pretext for retaliation. For these reasons, Plaintiff's retaliation claims fail as a matter of law.

### C. <u>Plaintiff's Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law</u>

Plaintiff alleges that Defendants engaged in "egregious, intentional, willful and wanton discriminatory conduct" resulting in serious emotional distress to Plaintiff and other African American police officers employed by GCRTA. (ECF #1, at. ¶¶ 109-111).

#### 1. Prima Facie Case

In order to recover on a claim for IIED, a plaintiff must demonstrate: (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to plaintiff; (2) the actor's conduct was so extreme and outrageous as

to go beyond all possible bounds of decency and was such that it could be considered as "completely intolerable in a civilized community"; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff was serious and of a nature that no reasonable person could be expected to ensure it. *Ridley v. Federal Express*, Cuyahoga App. No. 82604, 2004-Ohio-2543, ¶74.

Liability for IIED is found where "[t]he conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency…". *Id.* at ¶ 74, citing *Yeager v. Local Union* 20, 6 Ohio St.3d 369, 375 (1983). Accordingly, "[i]t is the rare case that reaches the very high bar of showing 'extreme and outrageous' conduct." *Lombardo v. Mahoney, Cuyahoga App.* No. 92608, 2009-Ohio-5826, ¶ 7.

### 2. Plaintiff Fails to Produce Evidence Supporting a Finding of Severe and Emotional Distress

Plaintiff fails to produce evidence to support a claim of Intentional Infliction of Emotional Distress. First, Plaintiff's termination alone does not support a finding of intentional infliction of emotional distress against Defendants. *Kovac v. Superior Dairy*, Inc., 930 F. Supp. 2d 870 (N.D. Ohio 2013) ("[a]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous' conduct without proof of something more."; *see also Seifert v. Graphic Packaging Int'l, Inc.*, 486 Fed. Appx. 594, 595 (6th Cir. 2012) (finding inter alia, that termination of employment for alleged poor performance "did not amount to extreme and outrageous conduct.").

Plaintiff's vague allegations pertaining to the distress he experienced as a result of GCRTA's alleged discriminatory and retaliatory conduct are untenable. *See Cummings v. Greater Cleveland Regional Transit Authority*, 88 F.Supp.3d 812 (where plaintiff's allegation that she did not receive a series of promotions and pay raises for discriminatory and retaliatory reasons did not

19

amount to extreme and outrageous conduct to support a claim for IIED). During his deposition, Plaintiff testified that he has not sought any medical treatment as a result of his termination or any of the claims asserted in his Complaint. (Anderson 302-303). While Plaintiff testified that GCRTA's adverse actions have caused him distress, it is well established "that [where] an employer or supervisor takes an adverse employment action it does not constitute 'outrageous conduct,' even when the action is unfair or harsh." *Fulst v. Thompson*, No. 2:09-CV-725, 2009 WL 4153222, at *5 (S.D. Ohio Nov. 20, 2009) (citing *Martin v. JBS Technologies, LLC*, 443 F. Supp. 2d 962, 970 (S.D. Ohio 2006).

Plaintiff provides no testimony as to the severity of his emotional distress. He fails to present any evidence of extreme or outrageous behavior on behalf of Defendants or any evidence to suggest Mr. Anderson suffered the requisite level of serious or debilitating emotional distress. Accordingly, Plaintiff's IIED claim fails as a matter of law and GCRTA is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF #33) is hereby GRANTED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: May 29, 2019